Argued and submitted June 21, decision of Court of Appeals and order of Workers' Compensation Board reversed; case remanded to Workers' Compensation Board for further proceedings September 29, 2005

In the Matter of the Compensation of
Marvin E. Lewis, Claimant.

Marvin E. LEWIS,
*Petitioner on Review,*

*v.*

CIGNA INSURANCE CO.;
and Active Transportation Co.,
*Respondents on Review.*

(CC 97-05360, 97-05050, 97-00071;
CA A106117; SC S51710)

121 P3d 1128

Linda C. Love, of Williams Love O'Leary Craine & Powers, P.C., Portland, argued the cause for petitioner on review. With her on the briefs were Michael L. Williams and Brian S. Campf.

Richard D. Barber, Jr., of Scheminske & Lyons, LLP, Lake Oswego, argued the cause and filed the briefs for respondents on review.

Before Carson, Chief Justice, and Gillette, Durham, Riggs, De Muniz, and Balmer, Justices.**

DE MUNIZ, J.

** Kistler, J., did not participate in the consideration or decision of this case.

## DE MUNIZ, J.

In this workers' compensation case we examine the kinds of sanctions that are available when a claimant refuses to participate in an insurer medical examination (IME). After claimant was summoned but failed to appear for two IMEs, the Department of Consumer and Business Services (department) approved the denial of his claims under ORS 656.262(13) and (14) (*former* ORS 656.262(14) and (15) (1999)). An administrative law judge (ALJ) concluded that the department could not impose a sanction of denial, but could only suspend the claims under ORS 656.325(1)(a), because that statute applied specifically to lack of cooperation in an IME. The Workers' Compensation Board (board), in a divided decision, reversed the ALJ's order and approved the denial of the claim. The Court of Appeals affirmed the board's decision. *Lewis v. CIGNA Ins. Co.*, 192 Or App 658, 87 P3d 698 (2004). On review, we conclude that only the sanction of suspension under ORS 656.325(1)(a), not the sanction of claim denial under ORS 656.262(13) and (14), applies to a claimant's noncooperation in an IME. We therefore reverse the decision of the Court of Appeals.

The Court of Appeals set out the following facts:

"Claimant filed claims [in 1997] for compensation following back injuries. Insurer arranged for claimant to take an IME. He failed to appear. Insurer rescheduled the IME and again [claimant] failed to appear. Further, on instructions from his attorney, [claimant] walked out of a deposition before opposing counsel had finished questioning him. As a result of these acts, insurer denied his claims under *former* ORS 656.262(14) and (15) (1999). * * * ORS 656.262(14) requires injured workers 'to cooperate * * * in the investigation of claims for compensation,' and ORS 656.262(15) allows an insurer to deny a claim if the claimant continues noncooperation for 30 days after notice.

"Claimant requested a hearing to contest the denial. In doing so, he did not explicitly indicate that he was requesting an *expedited* hearing. When his nonexpedited appeal reached the board, he made two arguments: First, that his conduct at the deposition did not amount to noncooperation; and second, that failure to attend an IME was not non-cooperation under ORS 656.262(14) and (15)—rather, it

was noncooperation under ORS 656.325(1)(a), and under that statute the maximum penalty was suspension of benefits as opposed to outright denial. Insurer, for its part, argued that claimant had forfeited his right to a hearing on noncooperation because ORS 656.262(15) allowed either an expedited hearing, which [claimant] did not request, or no hearing at all.

"The board rejected insurer's argument that claimant had forfeited his right to a hearing. On the merits of his claim, however, it concluded that his failure to appear at IMEs amounted to noncooperation under ORS 656.262(14). Because that incident of noncooperation sufficed to justify the insurer's denial, the board did not reach claimant's argument that his conduct at the deposition did not amount to noncooperation."

*Lewis*, 192 Or App at 660-61 (emphasis in original; footnote omitted).

Claimant sought judicial review. Insurer cross-petitioned, arguing that the board lacked authority to consider claimant's challenge to the noncooperation denials. The Court of Appeals agreed with insurer. *Lewis v. CIGNA Ins. Co.*, 174 Or App 531, 26 P3d 165 (2001). On review of that decision, this court concluded that the Court of Appeals erred, vacated that decision, and remanded the case in light of *SAIF v. Dubose*, 335 Or 579, 74 P3d 1072 (2003). *Lewis v. CIGNA Ins. Co.*, 336 Or 125, 79 P3d 882 (2003).

On remand, claimant argued that the insurer could suspend, but could not deny, his claim based on claimant's noncooperation at the IME because ORS 656.325(1)(a) specifically authorized only the sanction of suspension for a refusal to submit to an IME. He conceded that a more general statute, ORS 656.262, authorized a sanction of denial, but argued that that statute applied to noncooperation with less intrusive discovery techniques such as a deposition. Applying the maxim of statutory construction that, between inconsistent statutes, the more specific statute controls the more general statute, the Court of Appeals determined that suspension of the payment of compensation of the claimant's claim under ORS 656.325 was not inconsistent with the sanction of dismissal under ORS 656.262:

"Claimant's argument fails because the two statutes are not inconsistent. As the board noted, the general statute, ORS 656.262(14) and (15), applies to *initial* claims that involve compensability or the reopening of an aggravation claim, whereas the specific statute applies to any failure to attend an IME, for example, one requested in order to determine the propriety of proposed treatment. It is true that in the circumstances where the two statutes overlap—failure to cooperate in an IME for an initial claim—the two statutes provide different remedies. However, they are not inconsistent remedies. ORS 656.325(1)(a) *requires suspension* of benefits for noncooperation at an IME. ORS 656.262(14) and (15) *permit* an insurer to *deny* the claim in those circumstances. Thus, a worker who fails adequately to cooperate at an IME involved in an initial claim faces two sanctions, but they are not mutually exclusive: His benefits will definitely be suspended, and, if he continues noncooperation, they may be denied outright."

*Lewis,* 192 Or App at 666 (emphasis in original). The Court of Appeals concluded that both statutes could apply and therefore affirmed the denial of claimant's claim. We allowed claimant's petition for review.

■       In this court, claimant argues that his nonattendance at the examinations was reasonable but that, even if his nonattendance was not reasonable, the maximum statutorily authorized sanction that he faced was only a suspension of his right to compensation until the examination occurred, not a denial of his claims. Because we find the latter argument to be well taken, we confine our discussion to that issue.

Two statutory schemes address distinct categories of claimant noncooperation in regard to claims for workers' compensation, and they specify distinct sanctions for each category. ORS 656.325(1)(a), which deals specifically with IMEs, provides:

"Any worker entitled to receive compensation under this chapter is required, if requested by the Director of the Department of Consumer and Business Services, the insurer or self-insured employer, to submit to a medical examination at a time reasonably convenient for the worker as may be provided by the rules of the director. However, no more than three examinations may be requested except after notification to and authorization by the director. *If the*

*worker refuses to submit to any such examination, or obstructs the same, the rights of the worker to compensation shall be suspended with the consent of the director until the examination has taken place, and no compensation shall be payable during or for account of such period.* The provisions of this paragraph are subject to the limitations on medical examinations provided in ORS 656.268."

(Emphasis added.) That statute applies to a refusal to submit to or obstruction of an IME. If one of those events occurs, a worker faces a suspension of his or her right to compensation. In ORS 656.325(1)(a), the legislature specifically prescribed a suspension sanction under those circumstances, rather than the more punitive denial sanction.

Two subsections of another statute, ORS 656.262(13) and (14), address an injured worker's duty to cooperate with and assist insurers with respect to the more general topic of investigation of claims, and the sanctions that apply to a worker's failure to reasonably cooperate in claims investigation. Those subsections provide:

"(13)  Injured workers have the duty to cooperate and assist the insurer or self-insured employer in the investigation of claims for compensation. *Injured workers shall submit to and shall fully cooperate with personal and telephonic interviews and other formal or informal information gathering techniques.* Injured workers who are represented by an attorney shall have the right to have the attorney present during any personal or telephonic interview or deposition. However, if the attorney is not willing or available to participate in an interview at a time reasonably chosen by the insurer or self-insured employer within 14 days of the request for interview and the insurer or self-insured employer has cause to believe that the attorney's unwillingness or unavailabilty is unreasonable and is preventing the worker from complying within 14 days of the request for interview, the insurer or self-insured employer shall notify the director. If the director determines that the attorney's unwillingness or unavailability is unreasonable, the director shall assess a civil penalty against the attorney of not more than $1,000.

"(14)  If the director finds that a worker fails to reasonably cooperate with an investigation involving an initial claim to establish a compensable injury or an aggravation

claim to reopen the claim for a worsened condition, *the director shall suspend all or part of the payment of compensation* after notice to the worker. If the worker does not cooperate for an additional 30 days after the notice, *the insurer or self-insured employer may deny the claim* because of the worker's failure to cooperate. The obligation of the insurer or self-insured employer to accept or deny the claim within 60 [formerly 90] days is suspended during the time of the worker's noncooperation. After such a denial, the worker shall not be granted a hearing or other proceeding under this chapter on the merits of the claim unless the worker first requests and establishes at an expedited hearing under ORS 656.291 that the worker fully and completely cooperated with the investigation, that the worker failed to cooperate for reasons beyond the worker's control or that the investigative demands were unreasonable. If the Administrative Law Judge finds that the worker has not fully cooperated, the Administrative Law Judge shall affirm the denial, and the worker's claim for injury shall remain denied. If the Administrative Law Judge finds that the worker has cooperated, or that the investigative demands were unreasonable, the Administrative Law Judge shall set aside the denial, order the reinstatement of interim compensation if appropriate and remand the claim to the insurer or self-insured employer to accept of deny the claim."

(Emphasis added.)

Subsection (13) thus imposes a duty to cooperate in the investigation of claims, and imposes specific obligations on the claimant regarding submitting to and cooperating "with personal and telephonic interviews and other formal or *informal information gathering techniques.*" It also expressly entitles the claimant to have an attorney present during "any personal or telephonic interview or deposition."

Subsection (14) provides the remedy for a failure "to reasonably cooperate with an *investigation* involving an *initial* claim to establish a compensable injury[.]" (Emphasis added.) Under subsection (14), the director may suspend the payment of compensation. After 30 days of continued noncooperation, the insurer or self-insured employer may deny the claim.

In this case, the board divided respecting the question of how the foregoing statutes worked together. The majority, in effect, focused on the denial sanction in ORS 656.262(14) and imposed it as a consequence of claimant's failure to attend two IMEs, reasoning that that sanction was proper because an IME is one of the "formal or informal information gathering techniques" under ORS 656.262(13). The dissent disagreed, asserting that ORS 656.262(13) and (14) did not apply because ORS 656.325(1)(a) sets out a discrete policy regarding the duty to submit to an IME and the sanction that applied to a refusal to submit or obstruction of such an examination.

In affirming the board's decision, the Court of Appeals rejected claimant's argument that the sanction of suspension under ORS 656.325(1)(a) applied specifically to IMEs, while ORS 656.262(14) applied to other forms of information gathering. As noted, that court held that the two sanctions were not inconsistent because ORS 656.325(1)(a) contemplates suspension for noncooperation in an IME and ORS 656.262(14) contemplates suspension followed by denial of the claim during information gathering. *Lewis*, 192 Or App at 665. For the reasons that follow, we disagree with the Court of Appeals.

■ We begin with the rule of statutory interpretation expressed in ORS 174.020 (1997):

> "In the construction of a statute the intention of the legislature is to be pursued if possible; and when a general and particular provision are inconsistent, the latter is paramount to the former. So a particular intent shall control a general one that is inconsistent with it."[1]

With respect to the above-mentioned rule, this court has observed:

---

[1] ORS 174.020 now states, in part:

"(1)(a) In the construction of a statute, a court shall pursue the intention of the legislature if possible.

"* * * * *

"(2) When a general and particular provision are inconsistent, the latter is paramount to the former so that a particular intent controls a general intent that is inconsistent with the particular intent."

"[W]hen one statute deals with a subject in general terms and another deals with the same subject in a more minute and definite way, the two should be read together and harmonized, if possible, while giving effect to a consistent legislative policy. However, if the two statutes cannot be harmonized, 'the specific statute is considered an exception to the general statute.'"

*State v. Guzek*, 322 Or 245, 268, 906 P2d 272 (1995) (citation omitted).

In ORS 656.325(1)(a), the legislature provided a specific sanction, suspension, for resisting one form of discovery, an IME. The legislature elsewhere provided a general sanction for a claimant's noncooperation with various forms of claim investigation, which arguably also could be said to embrace an IME. However, the effect of allowing the use of a denial in connection with the failure to cooperate in an IME inescapably would require ignoring the specific legislative direction that suspension, not denial, should control a claimant's noncooperation in an IME.

The terminology that the legislature employed in the respective statutes is decidedly different. ORS 656.262(13) refers to "personal and telephonic interviews and other formal or informal information gathering techniques." As noted, the Court of Appeals and the board decided that those terms were general and all-inclusive of information gathering, including an expert examination of the claimant's body. In other words, the Court of Appeals concluded that expert examination of the claimant's body was a research technique akin to an interview. That understanding of the statutes is incorrect, for two reasons.

■ First, ORS 656.262(13) lists "personal and telephonic interviews" as examples of "formal and informal information gathering techniques," which suggests that "information gathering techniques" in this context share the basic characteristics of personal and telephonic interviews. "[W]hen the legislature chooses to state both a general standard and a list of specifics, the specifics do more than place their particular subjects beyond the dispute; they also refer the scope of the general standard to matters of the same kind, often phrased in Latin as *'ejusdem generis.'*" *Bellikka v. Green*, 306 Or 630,

636, 762 P2d 997 (1988). Under the principle of *ejusdem generis*, the scope of the phrase "formal and informal information gathering techniques" in this context is more limited than the phrase, standing alone, would indicate.

Second, we must view the terms in context, which includes other related statutes. *See PGE v. Bureau of Labor and Industries*, 317 Or 606, 611-12, 859 P2d 1143 (1993) (context considered at first level of inquiry). ORS 656.262 addresses the general subject of claims processing and establishes standards for gathering information at the initial stages of processing a workers' compensation claim (*e.g.*, talking to witnesses, collecting medical records, *etc.*). By contrast, ORS 656.325(1)(a) addresses only the subject of insurer medical examinations. The idea that the phrase "formal and informal information gathering techniques" does not include a medical examination of the claimant is consistent with our understanding that the sanction of suspension in ORS 656.325(1)(a) operates in a different and narrower context than the potentially harsher sanctions in ORS 656.262(14).

Insurer argues that the statutes make a distinction between claims that an insurer has not yet accepted and claims that it has accepted. According to insurer, ORS 656.262(13) and (14) (with the denial sanction) govern information-gathering during the investigatory stage, and ORS 656.325(1)(a) (describing the suspension sanction) governs medical examinations in the context of accepted claims only. We disagree. As we have demonstrated, ORS 656.325(1)(a) specifically governs IMEs, yet ORS 656.262(13) and (14) do not refer to IMEs at all. The statutes thus demonstrate that the legislature intended to treat an IME differently regardless of the claims processing stage at which the insurer seeks the examination.

Based on the foregoing, we conclude that ORS 656.325(1)(a) and ORS 656.262(13) and (14) make the legislature's intent clear. The legislature intended in ORS 656.325(1)(c) to treat an IME as a unique investigative procedure that is separate from other formal and informal information gathering techniques. In doing so, the legislature intended to limit the sanction for a claimant's noncooperation to suspension of a claim during any period of noncooperation.

The board and the Court of Appeals erred in concluding that ORS 656.262(14) authorized the department to deny claimant's claim for noncooperation with the IME.

Finally, we note that an unresolved issue exists regarding whether claimant failed to cooperate in a deposition in violation of ORS 656.262(14). The board did not resolve that issue and rested its reversal on the issue of noncooperation in the IME. Although claimant urges this court to address that issue, claimant's petition for review presented only the issue regarding the IME, and we shall not address a new issue at this time.

The decision of the Court of Appeals and the order of the Workers' Compensation Board are reversed. The case is remanded to the Workers' Compensation Board for further proceedings.